IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| CASSANDRA VASQUEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:21-cv-00028-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Cassandra Vasquez seeks judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this action **with prejudice**.

I.      STATEMENT OF THE CASE

Vasquez seeks disability benefits under Titles II and XVI of the SSA. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 24-1 at Tr. 24, 199-211. She applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") in July 2018. *Id.* Her application reported disability due to numerous conditions: ten herniated discs, severe spinal stenosis, migraines, sciatica, osteoarthritis, degenerative disc disease, arthritis, lung problems, and an enlarged heart. *Id.* at 228. The Commissioner denied her application initially and upon reconsideration, *see id.* at 119-30, 137-40, so Vasquez requested a hearing before an administrative law judge ("ALJ"). *Id.* at 143-44. ALJ Sherry L. Shallner conducted the hearing, *id.* at 42-70, and affirmed the

Commissioner's decision. *Id.* at 21-41. After the Social Security Appeals Council denied further administrative review, *see id.* at 1, Vasquez filed this action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review."). Her arguments on appeal concern the ALJ's RFC determination, which Vasquez contends was "based upon [the ALJ's] lay interpretation of the evidence of record and her lay medical opinion." ECF No. 25 at 4. Accordingly, Vasquez suggests the ALJ deviated from applicable legal standards and reached an RFC determination unsupported by substantial evidence, warranting remand. *Id.*

## II.     STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-83f. A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before

proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209

3

F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

The ALJ conducted the sequential evaluation. *See* Tr. 27-37. At step one, she found Vasquez "has not engaged in substantial gainful activity since August 23, 2016, the alleged onset date." *Id.* at 27. At step two, she found Vasquez "has the following severe impairments: degenerative disc disease with spinal stenosis of lumbar and cervical spine, and obesity." *Id.* At step three, she determined Vasquez's impairments do not meet or medically equal a condition listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* Before proceeding to step four, the ALJ assessed Vasquez's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967(a), except the individual can frequently balance and stoop; can occasionally kneel and climb ladders and ramps; can never crouch, crawl or climb ladders, ropes, or scaffolds; can occasionally reach overhead bilaterally but can reach frequently in other directions; can frequently grasp and finger bilaterally, and requires to stand briefly (1-2 minutes) every 30 minutes before returning to a seated position.

*Id.* at 28. (cleaned up). Based on that RFC, the ALJ concluded at step four that Vasquez could not perform any PRW. *Id.* at 36.

At step five, the ALJ considered Vasquez's age, education, work experience, and RFC and determined "jobs [] exist in significant numbers in the national economy that the claimant can perform." *Id.* By way of example, the ALJ relied on vocational expert ("VE") testimony that suggested Vasquez can work as a Press Clipping Trimmer (11,000 jobs nationwide); Addressing Clerk (3,000 jobs nationwide); or Document Prepper (19,000 jobs nationwide). Because Vasquez can work these and other jobs despite her medical impairments, the ALJ found her not disabled at step five. *Id.* at 37. Vasquez disagrees, asserting error in the ALJ's step-five analysis. Specifically, she contends (1) "[t]here is no medical assessment based upon the complete record that addressed the functional effect of Vasquez's impairments"; and (2) "[t]he ALJ erred in relying upon her own lay interpretation of the medical evidence of record and her own medical opinion to determine Vasquez's RFC." ECF No. 25 at 14-15. Finding no error, the undersigned disagrees.

The Court's review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence supports the Commissioner's decision. *See Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. Because the ALJ here applied correct legal standards and substantial evidence supports the RFC, Judge O'Connor should affirm the Commissioner's decision.

### A.     The ALJ applied correct legal standards when assessing Vasquez's RFC.

Reviewing courts must ensure "the Commissioner used the proper legal standards to evaluate the evidence" when denying a claimant social security benefits. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 29021) (citation omitted). Vasquez says the ALJ failed to do so because she "identified no functional assessment from a medical source that provided a basis for her RFC finding." ECF No. 25 at 15. In the absence of such evidence, Vasquez says the ALJ relied on "her own medical opinion" to reach an RFC determination. *Id.* If correct, remand is assuredly

warranted, as ALJs may not "play doctor" by relying on their "own lay opinions to fill evidentiary gaps in the record." *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). But for the reasons discussed below, the undersigned finds no legal error in the ALJ's RFC evaluation.

### 1. The absence of a formal functional assessment other than the SAMCs' reports does not invalidate the RFC.

Vasquez says the ALJ applied incorrect legal standards by reaching an RFC conclusion in the absence of any "medical assessment based upon the complete record" addressing her functional limitations. ECF No. 25 at 14. This argument stems from an observation Vasquez makes with respect to the similarly named state agency medical consultants ("SAMCs"), Drs. Rowley and Rowlands. She notes Dr. Rowley, the first SAMC, examined medical evidence from August 26, 2016 through May 10, 2018; while Dr. Rowlands, the second SAMC, considered medical evidence from August 26, 2016 through April 9, 2018. *See* ECF No. 25 at 14-15 (discussing Tr. 77-78, 87-88). But the administrative record before the ALJ contained medical records through November 7, 2019. *Id.* Thus, as Vasquez notes, "Dr. Rowlands did not consider 19 months of relevant medical records, and Dr. Rowley did not consider 18 months of medical records." *Id.* at 15. According to Vasquez, this forced the ALJ to deviate from applicable legal standards by relying on her own lay medical opinion for those unaddressed months. Because no additional evidentiary sources proffered a formal functional assessment of her limitations for that missing period, Vasquez believes the RFC is invalid and her case should be remanded. *Id.*

Missing from Vasquez's brief is case law stating an RFC is invalidated if the sources providing a functional assessment only had access to partial medical records. Vasquez argues "[t]here is no medical assessment based upon the complete record that addressed the functional effect of Vasquez's impairment." *Id.* at 14. But this is untrue. The ALJ has "sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

To this end, RFC determinations are administrative assessments based on the totality of the evidence. *See* 20 C.F.R. § 404.1545; Soc. Sec. R. 96-8p. As discussed in detail below, the ALJ here relied on an extensive array of record evidence, much of which spoke directly to Vasquez's functional impairments, and interpreted Vasquez's RFC from that evidence. The SAMCs' formal functional assessments were a singular piece of a larger evidentiary puzzle. Further, even if Vasquez was correct, her argument would not invalidate the RFC. *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012)) ("It is the responsibility of the ALJ to interpret 'the medical evidence to determine [the claimant's] capacity for work.'"); *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) ("We reject [claimant's] argument that because the record was devoid of a [RFC] assessment by a medical source, the ALJ was not competent to assess her RFC. It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion."). Accordingly, while Vasquez may succeed in marginally impeaching the SAMCs' reports, she does not succeed in arguing the alleged record deficiency invalidates the entire RFC.

### 2.     Vasquez's arguments misapply *Ripley*.

Even if Vasquez was correct and the administrative record lacked evidence regarding her functional limitations, she stretches this Court's precedent in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) too far. She applies *Ripley* and a smattering of related cases to argue the Court should remand her case with instructions for the ALJ to obtain a treating physician's opinion of her functional impairments. She misapplies *Ripley* in two respects.

First, *Ripley* interpreted an old regulatory regime no longer applicable to the Commissioner's disability determinations. *See Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021) (discussing 20 C.F.R. § 404.1520c) ("Notably, though, ALJs are no longer required to give

7

controlling weight to a treating physician's opinion, as was mandated by federal regulations and our case law in the past."). While *Ripley* itself remains precedent, its emphasis on treating physicians' opinions no longer holds sway. *See id.* Under the old regime, ALJs deferred to treating physicians' opinions; under the new, they do not. *Compare* 20 C.F.R. § 404.1527c(2) (giving treating source medical opinions "controlling weight" for "claims filed before March 27, 2017") *with* 20 C.F.R. §§ 404.1520c(a), 417.920c(a) (noting current ALJs need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); *see generally* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844 (Jan. 28, 2017) (noting the revised evidentiary rubric went into effect in 2017); Tr. 24, 199-211 (showing plaintiff's application was filed in 2018).

Based on the old rubric, which assigned controlling weight to a treating physician's functional assessments, the Court in *Ripley* remanded, explaining:

> [T]he ALJ's determination that Ripley was capable of performing sedentary work was not supported by substantial evidence. The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back. What the record does not clearly establish is the effect Ripley's condition had on his ability to work. The only evidence regarding Ripley's ability to work came from Ripley's own testimony.

67 F.3d at 557. But that is not the case here, as the record is replete with evidence regarding Vasquez's symptomology and its effects on her daily life and work prospects. *See infra*, pp. 11-14. Vasquez thus overstates her case in arguing that it tracks the facts of *Ripley*.

But the above regulatory changes notwithstanding, *Ripley* would not support Vasquez's contentions even if the courts analyzed evidence the same way today. *Ripley* did state that "[u]sually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing." 67 F.3d at 557. Indeed, the Court in *Ripley* remanded

with orders for the ALJ to do just that. *Id.* at 557-58 ("[O]n remand, we instruct the ALJ to obtain a report from a treating physician regarding the effects of Ripley's back condition upon his ability to work."). The undersigned has already shown the Commissioner's regulations no longer require a treating physician's opinion of a claimant's work-related impairments. But beyond that, *Ripley* was clear that "[t]he absence of such a statement, however, does not, in itself, make the record incomplete." *Id.* at 557.

Vasquez's arguments are uniquely unavailing because the ALJ here found substantial parts of the SAMCs' reports "less persuasive." *See* Tr. 35. As addressed above, the slight record gap in the SAMCs' reports does not equate to a record gap in the ALJ's ultimate determination. But even if it did, Vasquez's argument would only be persuasive if RFCs required the support of at least one SAMC to be valid. As it currently stands, the ALJ was correct to state "the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s)." *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 417.920c(a)). It matters little what types of experts presented what kinds of evidence to support the ALJ's conclusions. What matters is that the ALJ's conclusions are supported by at least one medical opinion and are grounded in substantial record evidence. *See Hollis*, 837 F.2d at 1383. Had no other evidence in the record spoken to Vasquez's functional limitations, that would be a different matter. But here the ALJ's conclusion was based in an array of evidence, and to the extent the ALJ considered the SAMCs' reports, she noted the very concerns Vasquez voices: "the opinions of the [SAMCs] that the claimant could perform less than a full range of light work are less persuasive [because t]hese physicians did not have the benefit of the entire record of evidence received at the hearing level." Tr. 35. Because ALJs can reach a valid RFC even if the SAMC

9

reports were based on marginally deficient medical records, Vasquez's argument on this point is unavailing.

The undersigned agrees with Vasquez to the extent she discusses clearly established law that ALJs may not make disability determinations utterly devoid of supporting medical opinion evidence. *See, e.g.*, *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015); *Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, at *7-8 (N.D. Tex. Mar. 31, 2016); *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *3 (N.D. Tex. Oct. 19, 2021), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022). But in those cases, the ALJ completely rejected the only medical evidence that lent support to his or her determination. This case is more analogous to *Ernest A.J.*, where the Court distinguished that line of cases for a factually similar claimant:

> However, *Fitzpatrick* is distinguishable from the instant case and does not help Plaintiff here. In *Fitzpatrick*, this Court found the ALJ's RFC determination, as a whole, was not supported by substantial evidence when the ALJ rejected all medical opinions of record and independently determined that the plaintiff could perform simple work despite having, among other things, moderate limitations in concentration, persistence, and pace. Where the Court in *Fitzpatrick* found the ALJ committed a *Ripley* error, the undersigned previously determined that no such error occurred here. As stated above, the ALJ did not reject the opinions of the [SAMCs], who, like the ALJ, concluded Plaintiff to be moderately limited in his ability to maintain attention and concentrate.

*Ernest A. J. v. Saul*, No. 1:18-cv-00194-BU, 2020 WL 6877706, at *17 (N.D. Tex. Oct. 19, 2020), *rec. adopted*, 2020 WL 6873609 (N.D. Tex. Nov. 23, 2020).

The ALJ in *Ernest A. J.* did not completely discredit the SAMCs' reports, but noted certain internal inconsistencies and assigned the reports only "some weight." 2020 WL 6877706, at *13. Similarly, the ALJ here found certain parts of the SAMCs' reports (Exhibits 1A, 2A, 5A, and 6A) "less persuasive" than other evidence of record. Tr. 35. Assigning less persuasive merit to

particular areas of a specific evidentiary source is a far cry from rejecting that source in its entirety. *See Ernest A. J.*, 2020 WL 6877706, at *14 ("The ALJ, in concluding that Plaintiff can perform simple, routine work involving simple work-related decisions, departed from the SAMCs' medical opinions insofar as the ALJ found Plaintiff to be more limited than the SAMCs opined. However, this departure does not constitute a rejection of those opinions, as Plaintiff suggests."). ALJs may assign more or less persuasive value to certain evidentiary sources and reach an RFC based on some, but not all, of the evidentiary record. *Id.*; *see also Taylor*, 706 F.3d at 602-03. That is precisely what the ALJ did here, rendering Vasquez's appeals to *Ripley* fruitless.

Having determined the ALJ did not legally err in her RFC analysis, the Court must now heed *Ripley*'s counsel: "In a situation such as the present one . . . our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." 67 F.3d at 557; *see also Leggett*, 67 F.3d at 564 (noting the ALJ's RFC assessment "is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the [ALJ's] decision or finds that the [ALJ] made an error of law"). The undersigned thus directs the remaining section to a review of the administrative record and the evidence in support of the ALJ's determination.

   **B.**  **Substantial evidence in the record supports the ALJ's RFC determination.**

Situations may arise in which the ALJ applies correct legal standards but for some reason reaches a decision unsupported by substantial evidence. Thus, a finding the ALJ committed no legal error only terminates half of the Court's inquiry. The Court must now examine the ALJ's RFC determination and determine whether substantial evidence supports the conclusion reached, issues with the SAMCs' reports notwithstanding. *See Ripley*, 67 F.3d at 557 (finding error only because "the record includes a vast amount of medical evidence establishing that [the claimant]

11

has a problem with his back" but "does not clearly establish . . . the effect claimant's condition had on his ability to work"); *Ernest A. J.*, 2020 WL 6877706, at *13 ("Unlike *Ripley*, this case contains evidence from multiple sources establishing the effect of Plaintiff's mental impairments on his ability to perform work-related activities."). Even a cursory perusal of the ALJ's RFC determination reveals it is grounded in substantial evidence.

The ALJ detailed her consideration of Vasquez's voluminous medical history between 2016 and 2019. *See* Tr. 30-35. She noted Vasquez "has not had any permanent substantiated limitations or restrictions placed on her ability to perform basic work activities by any treating physician/clinician." *Id.* at 35. She thus determined Vasquez can "perform sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967(a)," but outlined additional restrictions to account for Vasquez's functional limitations as reflected in the record. *Id.* With respect to the "sedentary work" restriction and additional limits, the ALJ explained:

> Notably, the claimant did not stop her job as a Phlebotomist due to her impairments. She was fired after she was caught smoking on the campus, which was all a non-smoking environment. The [ALJ] finds the claimant does have some significant back issues considering her young age, but she should be able to perform the [RFC] in light of all evidence including her activities.

Tr. 35, 52. The ALJ was more than justified in considering the fact that Vasquez's impairments did not cause her to quit working, and further to note she was terminated for reasons entirely unrelated to her impairments. Indeed, ALJs may take into consideration far-reaching evidentiary factors from myriad sources when considering a claimant's RFC. *See Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-cv-2001-L, 2012 WL 691893, at *6 (N.D. Tex. Feb. 17, 2012), *rec. adopted*, 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (quoting Soc. Sec. R. 96-8p) ("The ALJ's RFC assessment is based upon 'all of the relevant evidence in the case record,' including, but not limited

12

to, 'medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, and work evaluations.'").

Coupled with the expert medical evidence of record, the ALJ here found Vasquez's "reports of daily activities" and "recorded observations" informative. The ALJ looked for limitations Vasquez's impairments may have caused in her daily life. Finding none, she nevertheless incorporated additional limitations to account for Vasquez's back pain. *See id.* at 35. Still, she observed from the record that:

> [Vasquez] is able to take care of her own personal needs. She sits to dress and she uses a shower chair . . . [and] gets out of the house to do errands . . . She prepares meals. She waters plants and puts laundry in the dryer. She goes outside two to three times a week. She drives a car or rides in a car. She goes out alone. She shops in stores and by computer. She manages her finances, including paying bills, counting change, and handling bank accounts. She reads, watches television, and crochets daily . . . She goes to friends' houses, to Target, and to the nail salon weekly or bi-weekly. She does not need accompanied. She is sometimes irritable with family, friends, neighbors, or others, but she gets along very well with authority figures. She can lift 10 pounds. She can pay attention well. She completes tasks. She follows written and spoken instructions well. She testified that [s]he drives 15 times per week. She drives to the grocery store and she drives to her mother's work to visit. She drove to her hearing.

*Id.* (cleaned up). Taken together with evidence from Vasquez's treating physicians and relevant parts of the SAMCs' reports, Vasquez's relatively unhindered lifestyle bears little semblance to the life of an individual "disabled" under the Commissioner's guidelines. And because a claimant's daily activities often serve as a reliable bellwether for their future work prospects, the ALJ was justified in examining such evidence and drawing such a conclusion. *See Leggett*, 67 F.3d at 565 n.12 ("It is appropriate . . . to consider the claimant's daily activities when deciding the claimant's disability status.").

The record reflects the ALJ considered the entire evidentiary record and incorporated Dr. Provenza's and Lawal's treatment notes and observations; testimony and hearing evidence

regarding Vasquez's functional impairments; evidence of Vasquez's unhindered daily lifestyle; and the SAMCs' functional estimations to the extent they supplemented and were consistent with the rest of the record. *See* Tr. 31-35. Because those considerations are "such relevant evidence as a reasonable mind might accept to support a conclusion," substantial evidence supports the RFC. *See Ripley*, 67 F.3d at 555 (quoting *Greenspan*, 38 F.3d at 236). While Vasquez disagrees with the RFC assessment, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417). As that is not the case here, and the Court is "highly deferential" to the Commissioner, *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005), Judge O'Connor should affirm the Commissioner's decision.

## IV.   CONCLUSION

The ALJ applied correct legal standards and reached an RFC determination substantial evidence supports. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this action **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and

legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on June 30, 2022.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE